**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BRENDA SAQUICHE VICENTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00598-TWP-MG |
| | ) | |
| RICHARD KELLY in his official capacity as | ) | |
| Jailer of Clinton County Detention Center, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>**
**<u>AND DIRECTING IMMEDIATE RELEASE</u>**

This matter is before the Court on a Petition for Writ of Habeas Corpus and Complaint for Declarative and Injunctive Relief, filed by Petitioner Brenda Saquiche Vicente. (Dkt. 1). Ms. Saquiche Vicente is a noncitizen who is currently detained at the Clinton County Jail at the direction of U.S. Immigration and Customs Enforcement (ICE). The government placed her on an order of supervision ("OSUP") on February 3, 2019. Almost seven years later, on January 21, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Ms. Saquiche Vicente. In her Petition, she seeks, among other matters, immediate release from detention based on the Respondents' "failure to abide by their own process for revoking her order of supervision". *Id.* For the reasons described below, the Petition is granted to the extent that the revocation of her OSUP is declared to be invalid and her immediate release is ordered.

## I.    <u>BACKGROUND</u>

Ms. Saquiche Vicente, a Guatamalan citizen, entered the United States in 2013 and was removed shortly thereafter. (Dkt. 7-1 at 4). She again entered the United States, and on February 3, 2019, she was placed on an OSUP. (Dkt. 1-1 at 1). She represents, and the Respondents do not

1

contest, that she obtained authorization to legally work in the United States. (Dkt. 1 ¶ 28). Ms. Saquiche Vicente contends that she has no criminal convictions and has complied with all ICE reporting requirements. (Dkt. 1 ¶ 30); *see also* (Dkt. 7-1 at 4) ("no criminal history found"). Respondents do not contend that Ms. Saquiche Vicente was noncompliant with reporting requirements.

On January 21, 2026, Ms. Saquiche Vicente reported for her "check-in" with ICE, and was detained pursuant to a Form I-205 Warrant of Removal/Deportation. (Dkt. 7-1 at 3; Dkt. 7-4 at 2). The same day, a Notice of Revocation of Release issued from the Chicago, Illinois, Office of Enforcement and Removal Operations, stating that Ms. Saquiche Vicente's release had been revoked pursuant to 8 C.F.R. § 241.4 because the Field Office Director determined that "immediate revocation is the most appropriate course of action" and found that "revocation is in the public interest to ensure community safety, national security, and to uphold the integrity of the nation's immigration system" and that "referral of this case to the Executive Associate Commissioner is not reasonably permitted at this time." (Dkt. 7-5 at 2).  The Notice of Revocation of Release states that "your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time" *Id*. An ICE officer certified that he served the notice on Ms. Saquiche Vicente, who refused to sign the notice. *Id.* at 3. The Notice was signed by Matthew Putra as "Acting Field Office Director." *Id.* at 2.

ICE Officer Justin Kamelley completed a form indicating that he conducted an initial informal interview of Ms. Saquiche Vicente on January 21, 2026, to afford her an opportunity to respond to the reasons for revocation of her order of supervision stated in the notification letter. (Dkt. 7-6 at 2).

## II.    <u>LEGAL STANDARD</u>

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Ms. Saquiche Vicente argues that her detention is unlawful for eight different reasons:

(1) The Due Process Clause of the Fifth Amendment was violated because Respondents had no legitimate, non-punitive objective in revoking her OSUP;

(2) The Due Process Clause was violated because the OSUP was revoked without providing notice and a meaningful opportunity to respond;

(3) Revocation of the OSUP was not effectuated in accordance with the Immigration and Nationality Act and implementing regulations, thus being contrary to the agency's constitutional power and violating the Administrative Procedures Act (APA);

(4) Revocation of the OSUP was arbitrary and capricious, in violation of the APA;

(5) Revocation of the OSUP was based on regulations that are in excess of statutory authority;

(6) No statute, constitutional provision, or other source of law authorizes Respondents to detain Ms. Saquiche Vicente;

(7) Respondents violated agency regulations governing whom and upon what findings an OSUP may be revoked; and

(8) Ms. Saquiche Vicente had a liberty interest in her release under the OSUP, and she was not provided with the procedural due process required by *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Dkt. 1 ¶¶ 88–142.

In general, when a noncitizen is ordered removed, the Attorney General is to remove the noncitizen within 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain specified reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may release individuals and place them on an OSUP only if they "demonstrate[ ] to the satisfaction of

3

the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d)(1); *see also id*. § 241.4(e)(6).

Federal regulations prescribe procedures for revoking an OSUP and for returning a removable noncitizen to custody. Discretionary revocation of release for reasons other than violation of conditions of release (which no one suggests is the case here) is governed by 8 C.F.R. § 241.4(*l*)(2). This is the regulation that controls Ms. Saquiche Vicente's revocation. This subsection differs from § 241.4(*l*)(1) in that it specifically identifies who may revoke release and on what basis. Specifically, it grants discretion to revoke release to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. The District Director may act only if, in his or her opinion, "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."

Section 241.4(*l*)(2) specifies that either official may revoke release only if, in the official's opinion:

(i)     The purposes of release have been served;

(ii)    The alien violates any condition of release;

(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

The APA requires federal courts to "hold unlawful and set aside agency action" that is found to be:

(A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)     contrary to constitutional right, power, privilege, or immunity; [or]

4

(C)   in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations.").

### III.   ANALYSIS

In her Petition, Ms. Saquiche challenges her illegal detention as a result of the unlawful and arbitrary revocation of her OSUP by the United States Citizenship and Immigration Services a sub-agency of the Department of Homeland Security ("DHS") without the proper authority or notice, ICE without an individualized assessment, providing proper notice, or opportunity to be heard. (Dkt 1 at 2). Respondents assert that the DHS detained Ms. Saquiche Vicente on January 21, 2026,  for purposes of effectuating a removal order issued in 2019. (Dkt. 7-2). Respondents contend that Ms. Saquiche Vicente is lawfully detained under 8 U.S.C. § 1231, which provides for the detention and removal of individuals with final orders of removal. Respondents also argue that this Court lacks jurisdiction to bar DHS's ability to effectuate that removal. 8 U.S.C. § 1252(g); E.F.L. v. Prim, 986 F.3d 959, 964 (7th Cir. 2021). The Court will first address jurisdiction, before addressing the merits of the Petition.

#### A.  Jurisdiction

Respondents argue that the Court lacks jurisdiction because Ms. Saquiche Vicente is subject to a final order of removal. Under 8 U.S.C. § 1252(g), the Court is aware that it does not have jurisdiction to hear challenges to the Attorney General's decision "to commence proceedings,

adjudicate cases, or execute removal orders." The challenged action here, however, is the revocation of the OSUP, which is not enumerated in § 1252(g), so the Court has jurisdiction to hear this case. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840–41 (2018) (detention claims are not barred merely because they arise in the context of removal proceedings); *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999) (adopting the narrow interpretation of § 1252(g) that it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

## B.  Unlawfulness of Detention

Ms. Saquiche Vicente contends that the "Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked [her] order." (Dkt. 1 ¶ 136). Respondents insist that the revocation was properly revoked and in compliance with the applicable regulations.

As an initial matter, Respondents assert that 8 C.F.R. § 241.4(g)(3) applies "[b]ecause Ms. Saquiche Vicente is subject to a final order of removal."( Dkt. 7 at 8). The Court does not agree. That subsection states that a non-citizen "will not be *released* unless immediate removal is not practicable or in the public interest." 8 C.F.R. § 241.4(g)(3) (emphasis added). Here, the decision to release Ms. Saquiche Vicente was made in 2019 and is not contested. Instead, the challenge is to the decision to *revoke* her OSUP, and that decision is governed here (where no one asserts that Ms. Saquiche Vicente violated the conditions of her OSUP) by 8 C.F.R. § 241.4(*l*)(2).

This regulation grants discretion to revoke release to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. 8 C.F.R. 241.4(*l*)(2). Specifically, "[a] district director may also revoke release of an alien when, in the district director's opinion,

revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Respondents correctly identify that, 8 C.F.R. § 1.2 clarifies what "District Director" means in § 241.4(l)(2):

> Director or district director prior to March 1, 2003, means the district director or regional service center director, unless otherwise specified. On or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; *field office director*; service center director; or special agent in charge. *The terms also mean such other official, including an official in an acting capacity*, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security *who is delegated the function or authority above for a particular geographic district, region, or area.*

8 C.F.R. § 1.2 (emphasis added). Thus, the "Acting Field Office Director" is a "district director" for the purposes of § 241.4(l)(2) when he or she is "delegated the function or authority above for a particular geographic district, region, or area."

As noted above, Ms. Saquiche Vicente's Notice of Revocation of Release was signed by Matthew Putra, who is stated to be Acting Field Office Director. However, Respondents have not provided any documentation that the delegation mandated by 8 C.R.F. § 1.2 occurred much less that it occurred by someone with the authority to so delegate duties.

Additionally, in her Notice of Revocation of Release letter, Matthew Putra did not state that he held the opinion that any of the circumstances provided in § 241.4(*l*)(2) were present. He did not state that the purposes of release had been served, that Ms. Saquiche Vicente violated a condition or her release, that it is appropriate to enforce a removal order or commence removal proceedings against her, or that her conduct or any other circumstance "indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(2); dkt. 7-5 at 2.

There is no discussion of "the purposes of release." Mathew Putra does not suggest that Ms. Saquiche violated her release conditions. He states that the case is "under current review by Guatemala for the issuance of a travel document," so enforcement of the removal order was not possible at the time of the revocation (and Ms. Saquiche Vicente's removal proceedings had "commenced" years earlier). (Dkt. 7-5 at 2). The closest Matthew Putra gets to opining that a § 241.4(*l*)(2) criterion existed was stating that there were "changed circumstances" and that he "has determined that immediate revocation is the most appropriate course of action." *Id.* This is insufficient. The regulation requires not that revocation be appropriate—or even "most" appropriate. It requires *release* to be *no longer appropriate*. The appropriateness of these two options are not mutually exclusive; it is possible for both revocation to be most appropriate and for release to still be appropriate. Thus, Matthew Putra's opinion that revocation was "most appropriate" is not enough to satisfy § 241.4(*l*)(2), and the Court must conclude that the revocation does not comply with that regulation.

Though this might seem like splitting hairs, the *Accardi* doctrine requires agencies to abide by their own regulations to ensure that people are afforded with some due process protections. ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) ("ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi, et al.*, Case No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025) (same).

Here, the notice of Ms. Saquiche Vicente's OSUP revocation does not show that one of the reasons for revocation permitted by § 241.4(*l*)(2) was present. Additionally, Respondents have not

8

shown that Matthew Putra, who signed the OSUP revocation holding himself out as "Acting Field Office Director" had been properly delegated the authority to revoke Petitioner's OSUP. Ms. Saquiche Vicente is entitled to relief.

In the interest of judicial economy, the Court declines to discuss her other arguments.

## C. Proper Remedy

Ms. Saquiche Vicente requests immediate release. When release subject to an OSUP is purportedly revoked, but not by any official with authority to do so or according to the prescribed legal process, both the revocation of release and the current detention must be rescinded and set aside pursuant to the APA and the *Accardi* doctrine. *N.A.L.R. v. Bondi*, 2025 WL 2987239, at *3 n.2 (collecting cases demonstrating that district courts around the country have ordered immediate release of noncitizens being detained without compliance with 8 C.F.R. § 241.4(*l*)); *Guevara v. Maples*, No. 4:26-cv-00040-SEB-KMB, dkt. 13 at 7–8 (S.D. Ind. Mar. 5, 2026) (ordering release); *Hernandez Duque v. Maples*, No. 4:25-cv-00231-SEB-KMB, dkt. 32 at 6–7 (S.D. Ind. Jan. 14, 2026) (same). Under the circumstances here, immediate release is the proper relief.

## IV. Conclusion

For the foregoing reasons, Ms. Saquiche Vicente's Petition for Writ of Habeas Corpus and Complaint for Declarative and Injunctive Relief Dkt. [1] is **GRANTED**, in part, to the extent that:

(1) The Court **DECLARES** that the revocation of Ms. Saquiche Vicente's OSUP did not comply with the applicable regulations and is therefore invalid under the APA and the *Accardi* doctrine, and

(2)  Respondents are **ORDERED** to immediately release Ms. Saquiche Vicente subject to her most recent order (and conditions) of supervision.

Ms. Saquiche Vicente's requests for relief beyond the above are **DENIED**.

Respondents are allowed until **April 16, 2026**, to certify to the Court that Ms. Saquiche Vicente has been so released from detention.

9

Final Judgment will issue by separate order.

**IT IS SO ORDERED.**

Date: 4/10/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

10